Celestine FORD

v.

**TEMPLE HOSPITAL and National Union of Hospital & Health Care Employees, Local 1199C.**

**Appeal of Arthur S. KLEIN, Counsel for Plaintiff.**

**No. 85–1334.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 9, 1986.

Decided May 7, 1986.

As Amended May 19, 1986.

Arthur S. Klein, Ambler, Pa., for appellant.

Robert J. Reinstein and Stephen Bosch, Office of University Counsel, Philadelphia, Pa., for appellee Temple University.

Miriam L. Gafni, Freedman & Lorry, P.C., Philadelphia, Pa., for appellee Dist. 1199C, Nat. Union of Hosp. and Health Care Employees.

Before WEIS, HIGGINBOTHAM and BECKER, Circuit Judges.

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Arthur S. Klein, attorney for plaintiff, Celestine Ford, appeals an order of the United States District Court for the Eastern District of Pennsylvania entered May 17, 1985, assessing attorneys' fees and costs against him. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We are asked to decide whether the district court abused its discretion in awarding attorneys' fees. We hold that, for a portion of appellees' legal services, it was not an abuse of discretion for the district court to grant attorneys' fees. We also hold that the district court erred in the award of attorneys' fees for legal services performed prior to the filing of appellees' motions for summary judgment. The judgment of the district court will be reversed in part.

### I.

On May 31, 1984, appellant, attorney Arthur S. Klein, filed a Title VII Civil Rights action pursuant to 42 U.S.C. § 2000e–5(f)(1) on behalf of plaintiff, Celestine Ford, against Temple Hospital ("Temple") and the National Union of Hospital & Health Care Employees, Local 1199C (the "Union") alleging that appellees discriminated against plaintiff on the basis of her race.

On February 14, 1984, the Equal Employment Opportunity Commission ("EEOC") issued to Ford and her attorney, Klein, a notice of right to sue Temple and the Union.App. at 51, 53. Ford received her copy of the notice of right to sue on February 16, 1984 and a copy of said notice was received by someone in Klein's office no later than February 19, 1984.[1] App. at

---

**1.** The district court record shows that notices of right to sue were sent to the plaintiff and her attorney by the Equal Employment Opportunity Commission on February 14, 1984 by certified mail. The receipts show that the plaintiff received notice of right to sue Temple University Hospital on February 16, 1984, but there is no receipt showing when she received the notice of right to sue the National Union of Hospital &

Health Care Employees, Local 1199C. Also attached as part of the record are the receipts for the notices of right to sue which were sent to the plaintiff's attorney. The National Union of Hospital & Health Care Employees, Local 1199C contends that the receipts show that the notices were delivered on February 19, 1984. This date, however, was a Sunday and certified mail is not delivered on that day of the week. After exam-

52–53. The Title VII complaint was filed on May 31, 1984. The district court found that in August, 1984.

> plaintiff's counsel had received a copy of a letter from defendant Union's counsel to Judge Weiner [2] which stated that this action might be barred because it had been filed after the ninety day period specified by 42 U.S.C. § 2000e–5(f)(1) [3] and that attorneys' fees and costs might be sought if the action was not terminated. Counsel for defendant Temple sent plaintiff's counsel a similar letter on August 23, 1984.

*See* Memorandum and Order dated May 16, 1985, App. at 11. The positions of Temple and the Union were reiterated to Klein at a pre-trial conference on October 3, 1984 and the district court judge set a due date for Temple's and the Union's motions for summary judgment in the event that the matter was not resolved amicably.

The matter was not resolved and on October 17, 1984 and on October 19, 1984, Temple and the Union, respectively, filed motions for summary judgment asserting their position that 42 U.S.C. § 2000e–5(f)(1) barred plaintiff's action. Temple and the Union asserted that because the right to sue notices were received at Klein's office no later than February 19, 1984 and the complaint was not filed until May 31, 1984, 104 days after February 19, 1984, plaintiff failed to bring the action within the ninety days provided by 42 U.S.C. § 2000e–5(f)(1). Thus, plaintiff's action is time barred.

Klein, on behalf of plaintiff, did not dispute Temple's contention that the complaint had been filed after the ninety day period, but argued that the Supreme Court's holding in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), that the filing requirements of Title VII are subject to equitable defenses such as waiver, estoppel, or tolling, was applicable to this action. Klein posited the following three reasons why the late filing of the complaint should be excused: (1) although the notice of right to sue letters from the Equal Employment Opportunity Commission were received at his office no later than February 19, 1984, they were not actually received by him until March 1, 1984; (2) Klein had incorrectly marked June 1, 1984 as the day when the ninety days would expire; and (3) Temple and the Union failed to file their answers to the complaint within the twenty days provided by Fed.R.Civ.P. 12(a) and filed their motions for summary judgment eighty days after the complaint was served. The district court rejected Klein's arguments concerning the application of equitable principles to excuse the late filing and granted the motions for summary judgment. No appeal was taken from this action.

Thereafter, Temple and the Union filed motions for attorneys' fees. The Union sought attorneys' fees of $1,085.00 and costs of $41.00 to be assessed jointly and severally against the plaintiff and her attorney. Temple sought attorneys' fees of $881.25 against Klein. Temple and the Union sought attorneys' fees pursuant to (1) a federal court's inherent power to assess attorneys' fees when the losing party or the losing party's attorney has acted in bad faith; (2) 28 U.S.C. § 1927; or (3) section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). In response to the motions for attorneys' fees, Klein contended that he and Ford believed that Temple and the Union had waived their defense as to the untimely filing of the complaint. Klein further contended

---

ining the receipts, the district court judge noted that it appeared that the notices had been delivered to the plaintiff's attorney on February 15, 1984. However, for the purpose of deciding Temple's and the Union's motions for summary judgment, the district court judge assumed that the notices were received no later than February 19, 1984.

2. The case was originally assigned to Judge Weiner but was later reassigned to Judge Hannum.

3. 42 U.S.C. § 2000e–5(f)(1) provides in pertinent part:
[T]he Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

that the fact that he and Ford did not prevail on the waiver theory should not be the test for determining bad faith.

Nonetheless the district court judge assessed attorneys' fees against Klein[4] pursuant to either the bad faith exception to the general rule regarding attorneys' fees or 28 U.S.C. § 1927. The district court held that Klein acted in bad faith by *"bringing* and maintaining this baseless and frivolous litigation, attempting to justify it with atrocious legal reasoning and as a result wasting this court's valuable time" (emphasis added). *See* Memorandum and Order, App. at 13–14. The district court further held that:

> [t]his is not a case involving a diligent and creative attorney asserting a novel theory, but one involving an attorney who willfully *instituted* and continued to prosecute a frivolous and meritless action even after being informed on at least three occasions by the defendants that the claim was colorless because of its untimely filing. While the simple assertion by one's opponent that one's position is weak does not compel a finding of bad faith when the action is not voluntarily dismissed or withdrawn and the opponent's assertion is subsequently proven to be correct, an attorney is expected to know the requirements for bringing and proving a violation of Title VII and therefore cannot blindly pursue a meritless action. *See Perichak,* at 85; *Davidson v. Allis-Chalmers Corp.,* 567 F.Supp. 1532, 1542–43 (W.D.Mo.1983). This Court's conclusion that plaintiff's attorney acted in bad faith is further evidenced by the lack of legal authority and logical argument in the plaintiff's re-

sponse to defendants' motions for summary judgment (emphasis added). *Id.* at 14–15.

## II.

■ The general rule of law, known as the "American Rule", is that each party to a lawsuit bears its own attorneys' fees. *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 247, 258–59, 95 S.Ct. 1612, 1616, 1622–23, 44 L.Ed.2d 141 (1975). The rationale for this rule is that "one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)). However, over the years, courts have established a number of exceptions to the American Rule. One of the exceptions authorizes a federal court to award counsel fees to a successful party "when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). The power of the court to assess attorneys' fees was later determined by the Supreme Court to cover both litigants and their counsel. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (if a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes).

■ The federal cost statute, 28 U.S.C. § 1927,[5] further enabled the courts to im-

---

4. The district court did not assess any attorneys' fees or costs against plaintiff. The district court concluded that there was no evidence that Ford "took an active role in the institution or maintenance of this action or that she acted in any manner other than in good faith." *See* Memorandum and Order dated May 16, 1985, App. at 15–16.

5. This statute, first enacted in 1948 and as amended September 12, 1980, Pub.L. 96–349, § 3, 94 Stat. 1156, states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses,

pose sanctions for attorney misconduct, but the power to assess costs on an attorney in a given case is a power which "courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." *Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789, 795 (7th Cir.1983) (quoting *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). Thus, before attorneys' fees and costs may be imposed under section 1927, there must be a finding of willful bad faith on the part of the offending attorney. *Baker Industries, Inc. v. Cerberus, Ltd.,* 764 F.2d 204, 209 (3d Cir.1985).

■ In the instant appeal, our review of the district court's determination is two-fold. First, we must determine whether the district court's finding of bad faith on the part of appellant, Arthur S. Klein, was clearly erroneous; and second, whether the district court's imposition of attorneys' fees against Klein constitutes an abuse of discretion.

■ It has been established that a district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous. *See Baker v. Cerberus, Ltd.,* 764 F.2d at 210; *Perichak v. International Union of Elec. Radio,* 715 F.2d 78, 79 (3d Cir.1983); Fed. R.Civ.P. 52(a). This standard requires us to pay deference to the district court's interpretation of the factual record before it. *Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Once a finding of bad faith has been made, the appropriateness of assessing attorneys' fees against counsel under

section 1927 is a matter for the district court's discretion. *Baker v. Cerberus, Ltd.,* 764 F.2d at 210. To properly exercise this discretion, the district court must balance the equities between the parties and may award attorney's fees whenever overriding considerations indicate the need for such a recovery. Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice.[6] *Perichak,* 715 F.2d at 80. Consequently, to ensure that a court does not abuse its discretion, a federal court must determine whether the party or attorney who has been found to have acted in bad faith has satisfied the burden of proving that mitigating factors and circumstances warrant the exercise of discretion against the award of attorneys' fees. *Id.* at 81.

### III

#### A.

Klein's conduct, in the district court's view, constituted willful bad faith. The district court relied on the fact that once Temple and the Union notified Klein of the untimeliness of the complaint, the Title VII action became frivolous. Thus, the district court found that Klein's pursuit of a meritless action, with knowledge of such fact, constituted bad faith.

■ In our view, what would be indicative of bad faith in a case such as this one, would be some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.,* harassment or delay. *Cf. Baker Industries, Inc. v. Cerberus, Ltd.,* 764 F.2d 204, 223 (3d Cir.1985) (Higginbotham, J., dis-

---

and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

**6.** For example, it would not be an abuse of discretion for a district court to deny an attorney's fees petition where neither party acted in good faith in bringing or maintaining the litigation. *See Perichak v. International Union of*

*Elec. Radio,* 715 F.2d 78, 80 n. 5 (3d Cir.1983). In addition, it would be within proper discretion for a district court to reduce attorney's fees awarded against a "bad faith" plaintiff in light of her income and her need to support dependents. *See Fisher v. Fashion Institute of Technology,* 87 F.R.D. 485 (S.D.N.Y.1980).

senting). There is nothing in the record before this Court that such is the case here. Klein repeatedly maintained that based upon his knowledge that Title VII's filing requirements are subject to equitable defenses such as estoppel, waiver, or tolling, *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), and his good faith belief that Temple and the Union had waived their claim of any defects in the filing of the Title VII complaint he continued the litigation. It does not appear that Klein had any covert intention.

### B.

■ The district court held that Klein's conduct in *"bringing* and maintaining" the lawsuit was in bad faith. From our view, the major error of the district court was its failure to separately analyze the facts pertaining to (1) the *initiation* of a lawsuit and (2) a subsequent maintenance of a lawsuit *after* it has been established that an adversary has asserted an unchallengable defense. The complaint was filed on May 31, 1984, thus, 104 days after counsel's receipt of the EEOC's right to sue letter. However, the 90 day period in 42 U.S.C. § 2000e–5(f)(1) is not jurisdictional. There are innumerable cases where courts have held that suits filed after the 90 day period could not be dismissed even where the statute of limitations has been pled as a defense. *See Gates v. Georgia-Pacific Corp.,* 492 F.2d 292, 295 (9th Cir.1974) (where claimant has received inadequate notice, limitation period can be equitably tolled); *Carlile v. South Routt Sch. Dist. RE 3–J,* 652 F.2d 981, 986 (10th Cir.1981) (where plaintiff relied on unsolicited order extending the time within which she could file a complaint, employer's jurisdictional challenge ... had to be rejected, even though plaintiff did not file complaint until 141 days after receiving her right-to-sue letter); *Villasenor v. Lockheed Aircraft Corp.,* 640 F.2d 207, 208 (9th Cir.1981) (where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction, the limitations period can be equitably tolled); and *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042, 1045 (10th Cir.1980) (same).[7]

The statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c). As Professor Moore has advised us: "Rule 8(c) ... is concerned with affirmative defenses—the pleading of matter that is not within the claimant's prima facie case." 2A Moore's Federal Practice ¶ 8.27[1] at 8–175 (2d ed. 1985). "Statute of limitations— Rule 8(c) lists the statute of limitations as an affirmative defense; and when the statute merely bars the remedy it is truly an affirmative defense and is waived if not pleaded or otherwise properly raised." *Id.* ¶ 8.27[4] at 8–203. *See also Mumbower v. Callicott,* 526 F.2d 1183, 1187 n. 5 (8th Cir.1975); *Hodgson v. Humphries* 454 F.2d 1279, 1284 (10th Cir.1972) ("We think it clear that [the limitation provisions of the Portal-to-Portal Act] was intended as a limitation on the remedy available, not on the right to bring the action, and must be pleaded as an affirmative defense in accordance with the requirements of Fed.R. Civ.P. 8(c) ..."); *Henry v. First Nat. Bank of Clarksdale* 595 F.2d 291, 298 n. 1 (5th Cir.1979).[8]

In the real world of litigation, counsel are not expected to be omniscient. No one knows for certain whether a potential affirmative defense will be in fact pled. The

---

7. *Compare Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC *is not a jurisdictional prerequisite* to suit in federal court, but a requirement that like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *The structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion."*) (emphasis added).

8. This case involves res judicata and collateral estoppel which are defenses, like the statute of limitations, under Fed.R.Civ.P. 8(c) that must be affirmatively pleaded; and "... are considered waived if not pleaded in the trial court." *Henry v. First Nat. Bank of Clarksdale,* 595 F.2d 291, 298 n. 1 (5th Cir.1979).

law books are replete with decisions where counsel has failed to file an affirmative defense or failed to file it timely. *See Moore v. Tangipahoa Parish Sch. Bd.* 594 F.2d 489, 495 (5th Cir.1979) ("Under Fed.R. Civ.P. 8(c), laches and the statute of limitations are affirmative defenses. Not having raised these defenses in their pretrial memorandum (which served, in effect, as the answer) or in their posttrial brief, the defendants have waived them."). *See also Pearce v. Wichita County,* 590 F.2d 128, 134 (5th Cir.1979) (same). In this case, Klein was not bound to assume that his potential adversaries would plead the defense or that by their conduct they might not in some way waive the defense.

■ Thus, we hold that as a matter of law, on the unique facts of this case, the district court erred in ruling that the *initiation* of the complaint was in bad faith or frivolous. In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) the Supreme Court carefully noted the difference between (1) the initiation of a law suit and (2) at a later stage, continuing to litigate it. The court there stated "[h]ence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless, *or* that the plaintiff continued to litigate *after it clearly became so* " (emphasis added). *See also,* Judge Weinfeld's thoughtful opinion *Colucci v. New York Times, Co.,* 533 F.Supp. 1011, 1012 (S.D.N. Y.1982).

At least until the time when the motion for summary judgment was filed, under the facts of this case, Klein cannot be liable for the preceding legal costs.[9] Thus as a matter of law, the court should not have granted compensation for 11.3 hours of counsel fees to the Union and 5.75 hours of counsel fees to Temple for legal services spent prior to filing the motions for summary judgment.[10]

The uncritical imposition of attorneys' fees can have an undesirable chilling effect on an attorney's legitimate ethical obligation to represent his client zealously. Judge Weinfeld captures the heart of the issue when stating:

> The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the order of proper and forceful advocacy on behalf of his client.

*Colucci v. New York Times Company,* 533 F.Supp. 1011, 1014 (S.D.N.Y.1982). We believe that the standard of the Supreme Court in *Christiansburg Garment Co. v. EEOC,* 434 U.S. at 421–22, 98 S.Ct. 700–01 bears repeating[11]:

**9.** We are limiting our ruling to the facts of this case and we do not mean to imply that under different factual circumstances a court cannot grant counsel fee awards for services performed prior to the filing of a motion to dismiss or a motion for summary judgment.

**10.** The Union claimed that 21.7 hours were spent on this suit; while Temple claimed 11.75 hours. *See* Memorandum and Order, App. at 16. Pursuant to both the Union's and Temple's attorneys' fees petitions only 10.4 hours and 6.00 hours, respectively, were spent on this suit subsequent to the filing of the summary judgment motions. Thus, 11.3 hours and 5.75 hours, respectively, were spent on legal services prior to filing the motions for summary judgment.

In view of our decision, Klein should be liable for attorneys' fees in the amount of $520.00 to the Union and attorneys' fees in the amount of $450.00 to Temple. The method of fee calculation is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on any action subsequent to the filing of the summary judgment motions. In this case, the Union's hourly rate is $50.00; Temple's hourly rate is $75.00. *Id. Cf. Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 108 (3d Cir.1976) (the standard to be used to determine the proper award of fees is the "lodestar" method of fee calculation; a lodestar fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the suit).

**11.** Somewhat similar concerns were expressed by the author of this opinion as follows:

> Despite the tensions of the job, trial judges must have the patience and the resolve to tolerate advocates who are not gracious losers and who argue propositions on the marginal edge of evolving doctrines. For history teaches us that in the evolution of the law, legal propositions that were almost heresy one day

In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

### C.

After the motion for summary judgment was filed, the question becomes whether the continuance of the litigation was in bad faith. In the case at bar, Klein contends that his belated receipt of the right to sue letter (apparently due to an office inadvertence) would justify equitably tolling the statutory period. Klein's contention is clearly without merit. *See Espinoza v. Missouri Pacific Railroad Co.*, 754 F.2d 1247 (5th Cir.1985) (the mere fact that employee was out of town when the right to sue letter arrived at his home did not serve to toll 90-day period within which to file civil discrimination action, and thus, suit filed 92 days after delivery of letter was untimely). Klein does not come close

often at a later time become the law of the land.

enough to the kind of showing required to invoke the doctrine of equitable tolling. The Supreme Court in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984), listed some of the circumstances in which equitable tolling of the ninety-day period might be justified: (1) where notice from the EEOC does not adequately inform plaintiff of the requirement that suit be commenced within the statutory period; (2) where a motion for appointment of counsel is pending; (3) where the court itself has led plaintiff to believe that she has satisfied all statutory prerequisites to suit; and (4) where the defendant has, through affirmative misconduct, lulled the plaintiff into inaction. *See also Chappell v. EMCO Machine Works Co.*, 601 F.2d 1295, 1302 (5th Cir.1979) (equitable tolling of 180-day period appropriate where (1) suit pending in state court; (2) claimant is unaware of facts giving rise to Title VII claim; or (3) EEOC misleads claimant about the nature of his Title VII rights); and *Hibbard v. Don Love, Inc.*, 584 F.Supp. 2, 3 (S.D.Tex. 1984) (fact that plaintiff was moving during the ninety-day period does not justify tolling). Klein's alternate ground for equitable tolling—waiver based on Temple's and the Union's late answer to the complaint—also is clearly frivolous. In this case, Klein has made no showing that he would be entitled to equitable tolling.

Based on the foregoing, we hold that the district court's finding of bad faith is not clearly erroneous as to the continuance of the litigation after the motion for summary judgment was filed, and, would support an award of attorneys' fees to Temple and the Union under the bad faith exception to the American Rule. Thus, the district court's imposition of attorneys' fees as to counsel's subsequent conduct was not an abuse of discretion.

### CONCLUSION

We conclude that the district judge's findings as to appellant's conduct prior to

*Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 224, (3d Cir.1985) (Higginbotham, J. dissenting).

the filing of the motion for summary judgment is in error as a matter of law, and that the district judge's findings as to counsel's subsequent conduct was not clearly erroneous. As to those findings which we affirm here, the maximum award should be $520.00 to the Union and $450.00 to Temple.[12] The judgment of the district court is affirmed in part and reversed in part and the case is remanded for entry of a judgment consistent with this opinion. Each party to bear its own costs.